COMMONWEALTH of Kentucky,
Appellant,

v.

Hon. Ken COREY, Judge, Jefferson Circuit Court; Todderick Moore–Baker, (real party in interest), and Bruce Porter Mack, (real party in interest), Appellees.

No. 92–SC–85–TG.

Supreme Court of Kentucky.

March 12, 1992.

Chris Gorman, Atty. Gen., David A. Smith, Asst. Atty. Gen., Capital Litigation Branch, Crim. Appellate Div., Frankfort, and Joseph P. Gutmann, Office of Commonwealth's Atty., Louisville, for appellant.

John David Dyche, Brown, Todd & Heyburn; Daniel T. Taylor, III; Thomas E. Clay; Joseph R. Eggert; Brian J. Lambert, Office of Public Defender; Fred R. Radolovich; and Nicholas W. Carlin, Louisville, for appellees.

## ORDER VACATING AND REMANDING

LAMBERT, Justice.

This cause comes before the Court on transfer from the Court of Appeals (CR 74.02) and we have determined that the merits of the case should be resolved in this proceeding. The controversy has arisen by virtue of an interlocutory order of the trial court relating to guilty pleas and we must determine whether it is authorized under the law of Kentucky. We have concluded that it is not and remand this cause to the Jefferson Circuit Court with directions to vacate its order of January 3, 1992.

An indictment is now pending against appellees, Todderick Moore–Baker and Bruce Porter Mack, charging them with various crimes including capital murder. Prior to trial and not in response to any plea negotiations between the Commonwealth and the appellees, the trial court, *sua sponte,* entered an order which the Commonwealth has attacked as erroneous. Noting the complexity of the cases, the "thoroughness and tenacity of the defense team," the possibility of his recusal due to kinship to a witness, and the substantial anticipated duration of trial, the court ordered:

"[T]he defendants [should] be allowed to enter pleas pursuant to *Alford v. North Carolina* to all counts. By pleading pursuant to *Alford,* no loss of Fifth Amendment rights would result. The Court has further proposed that if death or life without parole for 25 years should be required at the sentencing phase, the defendants would be allowed to withdraw their pleas of guilty and proceed to trial by jury."

The issue which emerges from the foregoing order is whether the trial court may, over objection of the Commonwealth, initiate and accept a guilty plea conditioned on an express right of appellees to withdraw the plea if the court determines that a sentence of life without parole for 25 years or death should be imposed for the crimes committed.

At length the parties have debated the desirability of permitting a court-initiated guilty plea under circumstances which preclude imposition of the most severe punishments authorized by law. Despite their support for the position of the trial court, appellees candidly admit being unaware of any similar approach to plea bargaining in Kentucky and concede that it would be a departure from conventional practice. As such, we are being requested to write a new set of rules.

In support of the order under review, appellees argue that since the trial court, without regard to a jury verdict or recommendation by the Commonwealth, has ultimate sentencing authority, there is no valid reason to postpone exercise of that authority. For this proposition, appellees rely upon *Smith v. Commonwealth,* Ky., 634 S.W.2d 411 (1982), a case in which two defendants were indicted for murder. The triggerman entered a plea of guilty and was sentenced to twenty years imprisonment. Thereafter, the other defendant had a jury trial in which the court disallowed any evidence of aggravating circumstances on the view that imposing the death penalty on him would be unconstitutionally disproportionate. The Commonwealth sought certification of the law and this Court affirmed the trial court. The basis for our decision was the statute which permits the trial court to sentence within the limits prescribed by law and the futility of requiring the trial judge to hear evidence when he had already determined that the death penalty would be legally impermissible. In other words, we held that since the trial court viewed the death penalty as disproportionate as a matter of law and was within his right to impose a sentence less than death regardless of the jury verdict, there was no purpose to be served in submitting aggravating circumstance evidence to the jury.

There is a significant distinction between the instant case and *Smith v. Commonwealth, supra.* Here, the decision of the trial court as to the appropriate punishment will require a broad factual analysis, where in *Smith* the conclusion was mandated by the Court's view of the law.

Appellees also contend that RCr 8.10 permits the procedure which was employed here. They view the order as merely a statement of circumstances under which plea withdrawal would be permitted. The clear distinction between the procedure allowed in RCr 8.10 and the procedure attempted here is whether the terms are agreed upon between the Commonwealth and the defendant, subject to the approval of the court, or whether the court shall establish the terms subject to the approval of the defendant and without any participation by the Commonwealth.

The process of arriving at a guilty plea requires give and take between the Com-

monwealth and the defendant, and at some point, an agreement may be reached. Presumably the parties are aware of the strengths and weaknesses of their case and the plea agreement which emerges represents a fair balance of their interests. The requirement of approval by the trial court provides an additional safeguard and preserves its right of final determination. By contrast, in the case at bar, the plea withdrawal threshold was decided by the trial court, one who ordinarily knows much less about the case than the parties and one whose legal duty is to remain as an impartial arbiter between the adversaries. We have recently criticized involvement by the trial court in the process of plea negotiations on the view that when such occurs, the parties may be misled and the trial court risks losing its lawful discretion. We also held that no commitment should be made as to plea withdrawal. *Haight v. Commonwealth*, Ky., 760 S.W.2d 84 (1988).

In 1989, this Court amended RCr 8.10 to eliminate the pernicious practice of having criminal defendants come to court and declare that no promise had been made to them when, in fact, the plea of guilty was in express reliance upon a promise or representation. We also amended the rule to eliminate the possibility of arbitrary or freakish sentencing and validate honest plea bargaining between the Commonwealth and the defendant while reserving unto the trial court the final decision as to sentencing. In so doing, however, it was not our intention to introduce trial judges into the plea bargaining process and supplant the role of the Commonwealth and the defendant in making the tentative agreement.

It could hardly be disputed that the Commonwealth's Attorney is in charge of the prosecution of violations of criminal and penal laws and that plea bargaining is a part of the process. KRS 15.725. While RCr 8.10 does not expressly state that the plea agreement shall be between the defendant and the Commonwealth's Attorney, such a view is necessarily implied by virtue of the role conferred upon the trial court.

■ Appellees have also raised the specter of a circumstance in which a Commonwealth's Attorney would refuse to engage in plea bargaining or establish such onerous terms as to make it impracticable. In response to this argument, we simply observe that whether to engage in plea bargaining is a matter reserved to the sound discretion of the prosecuting authority.

"No defendant has a constitutional right to plea bargain. The prosecutor may engage in it or not in his sole discretion. If he wishes, he may go to trial." *Commonwealth v. Reyes*, Ky., 764 S.W.2d 62, 64 (1989).

Indeed, RCr 9.26 seems to confer an absolute right to a jury trial upon either the defendant or the Commonwealth.

■ Finally, we observe that by virtue of RCr 8.08, and without regard to the wishes of the Commonwealth, a defendant has an absolute right to unconditionally plead guilty to the crime charged in the indictment, and by a widely utilized procedural device, may do so while maintaining his innocence if he believes such a plea to be in his best interest. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Upon entry of such a guilty plea, the trial court must observe a number of procedural and substantive safeguards and impose a sentence within the limits prescribed by law. *Cf.* KRS 532.025 (the Kentucky capital sentencing statute). A defendant may avoid prosecutorial intransigence by entering a guilty plea pursuant to RCr 8.08 and depending on the wisdom of the trial court to impose an appropriate sentence. However, if the guilty plea has strings attached which limit the sentence which may be imposed by virtue of it, the Commonwealth must be a party to the agreement.

For its attack upon the order under review, the Commonwealth relies upon this Court's decision in *Allen v. Walter*, Ky., 534 S.W.2d 453 (1976), a case which holds that without consent of the Commonwealth, a trial court may not amend or reduce to a lower degree the charge brought against a defendant and that it is not the prerogative of the court to choose

what the accusation will be. The opinion explains that only after the evidence is presented does the court have a right to determine whether the evidence is sufficient under the law to sustain a conviction and what instructions should be given to the jury. Appellees predictably respond that the order of the Jefferson Circuit Court in no wise amends or reduces the charges brought; that the proposal only authorizes them to plead guilty to the crimes charged in the indictment subject to a limited right of plea withdrawal.

While it is clear that *Allen v. Walter, supra,* is not controlling authority, it is instructive in the limitations placed upon trial courts prior to receipt of evidence and return of a verdict. In *Allen,* the result of the amendment of the crime charged was to substantially reduce the punishment to which the defendant could be subjected and we granted prohibition. This limitation, coupled with the proscription of court-ordered dismissal of indictments without the consent of the attorney for the Commonwealth (RCr 9.64; *Commonwealth v. Huddleston,* 283 Ky. 465, 141 S.W.2d 867 (1940)), well illustrates the roles assigned to the Commonwealth's Attorney and the trial court in criminal prosecutions.

In the instant case, the order of the trial court has the effect of permitting a guilty plea with no possibility that the punishment imposed pursuant to the plea will be greater than life imprisonment. A plea under such circumstances can only be construed as abridging the power of the trial court to punish within the limits prescribed in KRS 532.025 or as an invalid guilty plea under RCr 8.08 due to the conditional nature of it. In either event, the plea would be invalid. While RCr 8.10 has many of the same characteristics, the distinction is in the source of the agreement and the absence of any self-imposed limitations by the trial court.

A final point must be addressed. As the trial court has ultimate sentencing authority, one may ask what purpose is served in requiring that it be postponed until after an unconditional guilty plea, after a bargained guilty plea, or after trial. When sentence is imposed after trial and receipt of the verdict, the court has benefit of having heard the evidence and the recommended punishment from the jury. Upon sentence pursuant to a plea agreement, the court may rely in part upon the agreed disposition as fairly serving the interests of both the Commonwealth and the defendant. When the defendant enters an unconditional guilty plea, the trial court may consider all relevant information and the full range of punishment without regard to any tentative determination it may have made as to the appropriate punishment and the possibility that the plea will be withdrawn.

Finally, we believe the determination here is not just a matter of form but also of substance. Whether a plea agreement should occur requires a particularized assessment of numerous factors which is complex for those persons most knowledgeable of the case and most deeply affected by its outcome. Our adversary system of criminal justice assigns the roles of the participants. It is the duty of the prosecuting authority and defense counsel to intimately know the case prior to trial, and ordinarily the trial judge does not gain such insight until all the evidence has been heard. Even then, in most cases, the court is not legally competent to make a final sentencing determination until a presentence investigation has occurred. KRS 532.050. For the trial court to determine the maximum sentence which may be imposed without a right of plea withdrawal, absent the concurrence of the Commonwealth, prior to trial, and without benefit of a presentence investigation, radically alters the substance of the process.

For the reasons stated herein, the order of the Jefferson Circuit Court entered in this action on January 3, 1992, is hereby vacated and this cause remanded for further proceedings.

IT IS SO ORDERED.

STEPHENS, C.J., and REYNOLDS and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents by separate opinion in which LEIBSON and SPAIN, JJ., join.

SPAIN, J., dissents by separate opinion in which COMBS and LEIBSON, JJ., join.

COMBS, Justice, dissenting.

With all respect for the majority's view and its skill of expression, I dissent, and would affirm the order of the Jefferson Circuit Court. The effect of this opinion is to give unwarranted authority to the prosecuting attorney to dictate the terms of pleas, in derogation of the roles of the trial court and defense counsel.

Implicit in the majority opinion is the statement that the trial court lacks the power to do what it proposed. But RCr 8.10 provides that "at any time before judgment the court may permit the pleas of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." Moreover, the General Assembly has given the trial court the final say as to sentencing, within limits not here exceeded. I see no prohibition against the trial court exercising its legitimate power at this stage of the proceeding.

The majority has apparently overlooked a feature of the case that seemed to be very important to Judge Corey. That is, the management of his trial docket. It is a legal truism that "justice delayed is justice denied." Judge Corey foresaw a lengthy and expensive trial consuming many months, which would delay the trial of many other important cases on his docket.

The Commonwealth is not prejudiced by this procedure. If the stated terms are not complied with, then a jury trial would be held. How many convictions in the Jefferson Circuit Court involving crimes more heinous than this have resulted in verdicts less severe than those set forth in the order? On the other hand, death row is already overcrowded. The failure of the executive to carry out jury mandates will probably soon necessitate building another facility just to hold inmates awaiting execution.

True, the trial court took a novel approach to a very difficult problem, but should we not be ever aware of ways and means by which to improve and expedite the process?

LEIBSON and SPAIN, JJ., join in this dissenting opinion.

SPAIN, Justice, dissenting.

I dissent from the Majority's Opinion and Order vacating the order of Jefferson Circuit Judge Corey. I can find no rule or statute prohibiting the procedure outlined by Judge Corey and also believe it to be within the inherent power of the trial judge. In my view, it is an ingenious device permitting exploration of every avenue toward resolution of at least a part of this serious criminal case. While not guaranteeing that a protracted jury trial will not be necessary, it substantially reduces the odds against it, which certainly is in the best interest of the public.

I take issue with the statement in the Majority Opinion that, under the proposed procedure, "the court shall establish the terms subject to the approval of the defendant and without any participation by the Commonwealth." Without any doubt, after the *Alford* pleas were taken under the proposed procedure, the trial court would order a complete presentence investigation followed by a report and an open-court hearing, all as provided for in KRS 532.025. At such a hearing and before the trial judge made his decision as to the appropriate punishment due each defendant, the Commonwealth would be given full opportunity to "participate" by introducing any evidence in aggravation of punishment and by offering argument regarding the punishment to be imposed. Thus the duly elected prosecutor would be afforded the input regarding the punishment which our adversary system contemplates. This is the extent of his participation in any case; he does not have the responsibility to actually set punishment or to sentence a defendant under our law—this burden is properly on the trial judge.

I would further emphasize that, under Judge Corey's proposed procedure, the trial judge would make *no* determination in advance of the presentence hearing as to

what punishment will be appropriate in a given case. Upon his making and announcing such final decision, the matter would be concluded or the defendant would elect whether to accede to the sentencing decision or to withdraw his *Alford* guilty plea and to stand trial. If this alternative were chosen, then the parties once again would be restored to their status quo as if the plea had never been entered. In either event, I see no prejudice to the Commonwealth.

COMBS and LEIBSON, JJ., concur in this dissent.