731 So.2d 686 (1998)
STATE of Florida, Appellant,
v.
Anthony P. GITTO, Allen Silas, Alfred Perkins, Justin P. Harbin And Corey Harpin, Appellees.
Nos. 97-1239, 97-1376, 97-1377, 97-1860 and 97-1934.
District Court of Appeal of Florida, Fifth District.
June 26, 1998.
On Motion for Rehearing and Certification April 30, 1999.
*687 Robert A. Butterworth, Attorney General, Tallahassee, and Kelli R. Orndorff, Jennifer Meek, Robin A. Compton, and Maximillian J. Changus, Assistant Attorneys General, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Jennifer Meek, Assistant Attorney General, Daytona Beach, for Appellant (on rehearing).
Roger L. Weeden, Orlando, for Appellee Anthony P. Gitto.
James B. Gibson, Public Defender, and M.A. Lucas, Assistant Public Defender, Daytona Beach, for Appellee Allen Silas.
James B. Gibson, Public Defender, and M.A. Lucas, Assistant Public Defender, Daytona Beach, for Appellee, Allen Silas (on rehearing).
Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellee Alfred Perkins.
Janet Brook Goodrich, Assistant Public Defender, Daytona Beach, for Appellee Corey Harpin.
Daniel D. Mazar, of Mead & Mazar, Attorneys at Law, Winter Park, for Appellee Justin P. Harpin.
EN BANC
GRIFFIN, C.J.
We have consolidated these cases for consideration because they involve a common issuethe authority of the trial court to strike a plea bargain with a defendant *688 over the prosecutor's objection.[1] Because we hold that the trial court has no authority to strike such plea bargains, it is error for the trial court to sentence a defendant in reliance on such a plea. Accordingly, we vacate the sentence in each of the consolidated cases.

STATE v. GITTO, Case No. 97-1239.
Gitto was charged by information with one count of arson and one count of being an accessory after the fact to arson for his involvement in burning two cars during an evening of random destruction. His guidelines scoresheet showed a permissible sentence of 29.9 months to 36.1 months in the Department of Corrections. He pled guilty to both offenses pursuant to a plea agreement he struck with the trial judge. The plea stated:
Court has indicated it would give a non-incarcerative sentence either as a downward departure or youthful offender.
The state objected to the imposition of a downward departure. Gitto nonetheless received four years probation on each offense, to run consecutively. The trial court offered three written reasons to support its downward departure sentence.

STATE v. HARBIN, Case No. 97-1860.
Harbin was charged by information with two counts of arson for burning two cars during an evening of random destruction. Harbin's guidelines scoresheet showed a permissible sentence of 42.1 to 70.2 months in the Department of Corrections. He pled guilty to both offenses based on the following understanding reached with the court:
Ct. has indicated that it would "cap" sentence at 42 months with the possibility of a downward departure and youthful offender treatment with restitution.
Pursuant to the agreement, Harbin was given probation and adjudication was withheld. The prosecutor objected to the trial court's entry of a downward departure sentence, whereupon the trial court made oral findings on the record designed to sustain the departure.

STATE v. SILAS, Case No. 97-1376.
Silas was on probation for burglary and theft. He was charged with resisting an officer with violence and battery on a law enforcement officer, as well as with violating his probation. He pled guilty to the new offenses, based on an understanding with the trial court that he would receive five years drug offender probation, with the special condition that he receive specified drug treatment. The trial court (orally) justified the departure on the grounds that Silas suffered from a drug addiction and was amenable to treatment. The prosecutor objected to entry of a downward departure sentence because of a lack of evidence to support the reasons given by the trial court.

STATE v. HARPIN, Case No. 97-1934.
Harpin was charged with burglary of a dwelling and grand theft after breaking into the home of a friend. He was also charged with violating probation he had received for burglary of a structure, grand theft, and criminal mischief. At the plea hearing, the court insisted on an open plea, saying it did not want to be bound by the sentence. However, the court had apparently indicated to defense counsel a "99% certainty that the defendant would be sentenced as a youthful offender to boot camp." At sentencing, a different judge sentenced Harpin on the two new offenses and resentenced him on the original offenses for violating his probation. With respect to the two new offenses, his guidelines scoresheet showed a total of 64.8 points, for a minimum sentence of 27.6 months in the Department of Corrections and a maximum sentence of 46 months. He received a guidelines sentence of two and a half years (30 months) in the Department of Corrections on each offense, to be run concurrently. On the original offenses, Harpin apparently received one *689 year and one day in the Department of Corrections. Subsequent to sentencing, the public defender filed a motion to modify Harpin's sentence, due to promises made by the original trial judge at the plea hearing. At the hearing on defendant's motion to modify his sentence, the public defender represented that the trial court had promised him a specific sentence in return for defendant's plea, but had refused to place the agreement on the record because the court wanted to "scare" the defendant. The state strongly objected to the trial court's entry of a downward departure sentence, in part because defendant had not filed a motion to withdraw his plea. The trial court resentenced Harpin on the new offenses because the court had made representations to him which were "inconsistent" with the sentence he had received. He was resentenced to a downward departure sentence of 364 days in the county jail.

STATE v. PERKINS, Case No. 97-1377
Perkins was charged in lower court case number 96-1922 with possession of cocaine and possession of marijuana. Based on the commission of these new offenses, he was also charged with a violation of his probation in lower court case number 90-521CFB (which involved two counts of aggravated battery). Over the state's objection, he entered into a plea agreement with the trial court, not the prosecutor, which purported to cover both the new offenses and VOP. The plea agreement stated:
Adjudication, if not already adjudicated; 4 years probation; special condition that Defendant complete the Sanford Bridge and court costs.
For the new offenses, Perkins was sentenced to four years of probation for possession of cocaine and six months probation for possession of marijuana. He was also sentenced to four years of probation for violating his probation with respect to one of the aggravated battery counts.[2] All counts were to run concurrently. As a condition of his probation, Perkins was required to get inpatient treatment for his drug addiction at Sanford Bridge. The reason for entry of a downward departure stated by the court was:
The Defendant is addicted to drugs as found in the TASC evaluation and is amenable to inpatient treatment at the Bridge.
These five cases ostensibly involve entry of downward departure sentences. However, they also concern the power of the trial court to enter into a plea agreement with the defendant, since the sentences were reached by plea negotiations between the trial judge and the defendant.
We conclude, consistent with courts of other jurisdictions, that the trial court has no power unilaterally to enter into a plea agreement with the defendant and that such an agreement cannot form the basis of a downward departure from the guidelines.[3] The inability of the trial court to plea bargain with a defendant has its genesis in the doctrine of separation of powers, which is a cornerstone of our form of government. In Florida, the doctrine is incorporated in Article II, section 3, of the Florida Constitution, which provides:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
The purpose of this provision was to incorporate well-known common-law principles of the doctrine of separation of powers into Florida law. Petition of Florida State Bar Association, 155 Fla. 710, 21 So.2d 605 (1945). Our Constitution specifically prohibits a person belonging to one of such branches from exercising any powers "appertaining *690 to either of the other branches unless expressly provided herein." Hoffman v. Jones, 280 So.2d 431, 440 (Fla. 1973).
In the criminal context, the power of the executive branch, which enforces or executes the laws, is wielded through the office of the prosecutor. The prosecutor has control over the decision when and whether to bring criminal charges, and which charges will be brought. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). As an extension of the power to control the charges brought against a defendant, the prosecutor has the exclusive authority to enter into a plea bargain with the defendant. Id. Reposing this authority in the hands of the prosecutor is grounded on practical, as well as constitutional, considerations. Since the prosecutor is the person most aware of the strengths and weaknesses of his case, and the facts upon which the prosecution is based, it is the prosecutor, and not the court, who should determine whether and when to enter into a plea bargain. Commonwealth v. Corey, 826 S.W.2d 319 (Ky. 1992).[4] Concentration of the power to plea bargain in the hands of the prosecutor also encourages greater prosecutorial accountability and fosters more even-handed enforcement of the laws within the jurisdiction.
The role of the judiciary in the plea bargaining process is limited. The court's primary role is to act as a impartial arbiter between the prosecutor and the defendant, so as to enable the court to determine that the plea is voluntarily and intelligently entered and supported by a factual basis. Albert W. Alschuler, The Trial Judge's Role in Plea Bargaining, 76 Colum. L.Rev. 1059 (1976); Fla. R.Crim. P. 3.172(a). While the judiciary has the power to accept or reject a plea, Fla. R. Crim. P. 3.172(g), the court's role is a secondary one, designed as a safeguard against excess on either side. The court's power to accept or reject a plea does not permit the court to interfere with the prosecutor's function. The trial court's entry into a "plea agreement" with defendant, over the prosecutor's objection violates the doctrine of separation of powers. See People v. Mikhail, 13 Cal.App.4th 846, 16 Cal. Rptr.2d 641 (1993); Williams, supra; Corey, supra.
Some of the cases involved in this appeal ostensibly concern only the entry of a downward departure sentence over the prosecutor's objection. However, in all of these cases, the plea was entered based on promises made by the trial court over the prosecutor's objection. While the trial court clearly has the power to sentence a defendant to a downward departure once a plea has been entered, for the trial court to agree in advance to a sentence, without the knowledge of the case possessed by the prosecutor or without the benefit of having heard evidence at trial, is error. See Corey, 826 S.W.2d at 322. It undermines the sentencing process, which contemplates independent sentencing by the trial court once plea negotiations are concluded. See generally Tilghman v. Culver, 99 So.2d 282 (Fla.1957), cert. denied, 356 U.S. 953, 78 S.Ct. 918, 2 L.Ed.2d 845 (1958). In Tilghman, in holding that a trial court cannot bind itself to a sentencing agreement with a defendant, the court said:
Courts cannot bind themselves to agreements such as that shown by this *691 record. To countenance such would require too high a price for administrative efficiency. The judge is an instrument of the law charged with meting out just punishment to convicted men. Just punishment is that which fits the circumstances of the crime and the particular criminal; therefore, expediency has no place in formulating the judge's act.
Id. at 286.
This case has been decided en banc because of our failure to recognize in two prior cases that the trial court's acceptance of a plea over the prosecutor's objection is clear error which requires outright reversal of any sentence entered in reliance on such a plea. See State v. Herrick, 691 So.2d 540 (Fla. 5th DCA 1997); State v. Smallwood, 664 So.2d 309 (Fla. 5th DCA 1995).[5] In our earlier cases, after recognizing that the trial court had no authority to bargain with the defendant, we went on to consider the validity of the reasons for departure given by the trial court. Because the plea on which the sentence was predicated was improperly obtained, we should not have done so.
On remand, the trial court must give these defendants the opportunity to withdraw their pleas. If they do not, the trial court should resentence these defendants without reference to any prior plea arrangements made without agreement from the state. The trial court may, of course, impose downward departure sentences without reference to any agreement with defendants. We note, however, that in several of these cases, the reasons for departure either appear invalid or do not appear to be supported by the record.
REVERSED and REMANDED for further proceedings consistent with this opinion.
DAUKSCH, COBB, W. SHARP, GOSHORN, HARRIS, PETERSON, THOMPSON and ANTOON, JJ., concur.

ON MOTION FOR REHEARING AND/OR REQUEST FOR CERTIFICATION EN BANC
GRIFFIN, C.J.
This matter is before the court on motion for rehearing filed by one of the defendants, Allen Silas. Mainly, Silas urges that the state did not present an adequate objection to the court's promise to downward depart in exchange for a guilty plea by Silas. We find the objection to have been adequate.
We have also taken time to reflect on our opinion and to consider the views of its critics. When our opinion was initially issued, we had not seen this plea bargain practice anywhere else in the district nor had the practice been brought to our attention. In condemning the practice by unanimous vote of the court, we stated what we believed to be an expression of the obvious. As another court has explained:
There are a number of valid reasons for keeping the trial judge out of plea discussions, including the following: (1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent. (citation omitted, footnote omitted).
*692 State v. Buckalew, 561 P.2d 289, 291 (Alaska 1977). To this list, which is taken substantially from the ABA Standards Relating to Pleas of Guilty § 3.3(a), Commentary at 72-73 (1968), we add considerations of concern for victims' legislatively created rights. Section 921.143, Florida Statutes, requires that before the court imposes a sentence upon any defendant, it must first hear from the victim. Since the victim has the statutory right to be heard at sentencing, due process requires that he or she not only be given notice of the sentencing hearing but also that such victim will be heard at a "meaningful" time. It is not a meaningful time to hear the victim after the court has pre-determined the sentence in order to get a plea agreement. The victim should not be required to change the court's mind. A pre-disposed judge does not give the appearance of impartiality.
In the cases before us, we are faced with fully negotiated sentencing agreements to which the state objected and in which it had no participation. We see the practice of the trial judge expressing general sentencing policies that may help inform a plea agreement between the state and a defendant or which may influence the unilateral decision by defendant to offer a guilty plea as qualitatively different from the activity we have disallowed. If done carefully, the former is not objectionable. In State v. Warner, 721 So.2d 767 (Fla. 4th DCA 1998), the court was presented with yet a third scenario: the trial court had suggested to the defendant that it would impose a downward departure sentence in response to a plea to the charges, whereupon the defendant, on a later date, pled guilty to the charges. The Warner court, citing the supreme court's decision in Davis v. State, 308 So.2d 27, 29 (Fla.1975), urges that such "plea agreements" are not objectionable because they are not truly "agreements." Because the court cannot be bound to impose the sentence that the court either "suggested" or "agreed to," the Warner court finds there really is no "plea bargain" that the state can complain about. The court can simply change its mind at any point and impose whatever sentence it pleases. If this occurs, however, the defendant is entitled to withdraw his plea. What the Warner court approved appears to be in the nature of a criminal equivalent of "quasi-contract." Because the judge knew a defendant expected to receive the sentence stated by the judge, and because the defendant did rely upon it in offering the plea, if the court fails to sentence in accordance with its representation, the defendant can rescind. If, on the other hand, the court acts in a manner consistent with its representation, there is no basis for the state to complain. This seems to us the worse of all worlds: one that permits judicial "representations," "agreements," or "suggestions" that are, in effect, plea bargains but which give the court free rein to renege on them. As a panel of this court recently observed:
We disagree with State v. Warner, 721 So.2d 767, 23 Fla. L. Weekly D2540 (Nov. 18, 1998), that simply because the court's commitment is not binding, it is somehow appropriate. Why is the court's commitment not enforceable? Is it because its commitment is conditioned or because public policy simply will not permit such a binding commitment? We believe the State, representing the victim(s), and the victim(s) if the victim(s) appears at sentencing, are entitled to present their argument as to an appropriate sentence to an uncommitted judge. They should not have the burden of having to convince a judge that he or she should renege on his or her previous commitment. It is unseemly for a judge, the personification of the lady with the blindfold and set of scales, to make an independent compact with an admitted felon to sentence him to less than the law prescribes.
State v. Clark, 724 So.2d 653, 654, n. 2 (Fla. 5th DCA Jan.15, 1999).
*693 In Davis v. State, cited by the Warner court, although there is reference to an agreement between the defense and the court, one cannot tell if it was a true negotiated plea agreement. Further, there is no indication that the state opposed the concession made by the court, if it was a true negotiated plea agreement, in order to induce a plea. Perhaps the parties (the state and the defense) asked the judge what he would do if the defendant pleaded guilty. The state may have acquiesced to the judge's indicated sentence and thus the plea was entered. Moreover, the issue in Davis was whether the court's agreement could be specifically enforced.
If in fact the court's agreement in Davis was the product of a conference between the state, the defense, and the court in which the parties sought the court's assistance in resolving the matter after which the parties' concurrence in the court's proposed resolution led to a plea, then the process was consistent with the present position of the American Bar Association Standards for Criminal Justice. Standard 14-3.3 (c) provides:
(c) When the parties are unable to reach a plea agreement, if the defense counsel and the prosecutor agree, they may request to meet with the judge in order to discuss a plea agreement. If the judge agrees to meet with the parties, the judge shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a preplea report before rendering a decision. The parties may thereupon decide among themselves, outside the presence of the court, whether to accept or reject the plea agreement tendered by the court
But even this approach is beyond the authority contained in Florida Rule of Criminal 3.171(d) relating to the court's responsibility in plea agreements:
After an agreement on a plea has been reached, the trial judge may have made known to him or her the agreement and reasons therefor prior to the acceptance of the plea. Thereafter, the judge shall advise the parties whether other factors (unknown at the time) may make his or her concurrence impossible.[1]
Nothing argues for this unsavory practice except expedience. If, in fact, criminal dockets have reached a critical mass, it would be better, as with prison overcrowding, that there be a systemic solution, even if drastic, rather than to have judges appear to sell their discretion in order to make a deal. We agree with the Second Circuit Court of Appeals in United States v. Werker, 535 F.2d 198 (2d Cir.1976) that:
[Judicial] participation in the plea bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant. (Footnote omitted).
*694 Against expedience is all that we have referred to above, plus the risk that a higher court will be called upon to review and set aside such pleas as coercive. In the Matter of Cox, 553 A.2d 1255 (Maine 1989); see also Wanda Wakefield, Judge's Participation in Plea Bargaining Negotiations as Rendering Accused's Guilty Plea Involuntary, 10 A.L.R.4th 689 (1981).
The motion for rehearing and request for certification are denied. The court sua sponte issues a corrected opinion.
DENIED.
DAUKSCH, COBB, W. SHARP, GOSHORN, PETERSON, THOMPSON, and ANTOON, JJ., concur.
HARRIS, J., concurs and concurs specially, with opinion, in which DAUKSCH, J., concurs.
HARRIS, J., concurring and concurring specially:
I concur with Judge Griffin that the judge's direct negotiation of a plea agreement with the defendant over the objections of the state is not permitted. I write because the position taken by the Fourth District in State v. Warner, 721 So.2d 767 (Fla. 4th DCA 1998), raises a question of constitutional proportions which warrants further discussion. If a judge in direct dealing with the defendant states, "If you agree to plead, I'll give you two years," has not the judge, at least by implication, said, "If you don't plead, I'll give you more"? The trial judge in Barker v. State, 259 So.2d 200 (Fla. 2d DCA 1972), recognized this problem and specifically advised the defendant that he would get probation whether he pled or whether he was found guilty by the jury. Perhaps judges now believe that this approach is not sufficient inducement to extract a plea. After all, if there is no inducement not to go to trial, either financially (normally the Public Defender is involved) or in the possibility of a greater sentence after trial, why should the defendant not seek an acquittal?
Judge Anstead, writing for the Fourth District in Gallucci v. State, 371 So.2d 148, 149 (Fla. 4th DCA 1979), in reversing a sentence, observed:
[W]e cannot overlook the court's own statement that after a jury trial probation will be denied "unless it is very, very odd and weird circumstances." On its face the statement implies that those that demand a trial will be treated differently than those that do not. Such different treatment is not permitted.
The Florida Supreme Court in City of Daytona Beach v. Del Percio, 476 So.2d 197, 205 (Fla.1985) (quoting United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)), was more emphatic:
The law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional.
There is a material difference between a court, after hearing a presentation by the parties concerning their proposed agreement, indicating that under the facts presented their agreed sentence would be acceptable to the court,[1] and the court, on its own, proposing a sentence on the condition that the defendant plead guilty. There is also a distinction, but somewhat less material, between the judge's approval of the parties' agreement and a situation in which the judge, at the request of the parties, *695 actively participates in determining which sentence will be imposed if the defendant pleads. The first sentence of this paragraph reflects the original position of the American Bar Association Standards for Criminal Justice; the second sentence reflects the current standard.
I am not convinced that even the agreement of the parties to accept the court's proposal of a lesser sentence if the defendant waives his right to trial will pass constitutional muster. If the defendant elects not to accept the court's offer and is convicted at trial and if the court does not impose the previously offered sentence, is there not at least the appearance that defendant is being punished for electing to go to trial?[2] Certainly if the defendant and the state accept the court's offer, and if the court carries through with it, then the parties are estopped to raise the issue on appeal. Thus the issue will surface only if the defendant rejects the court's offer or is subsequently permitted to withdraw the plea.
Whether in its negotiations the court agrees to downward depart or merely to give a lesser guideline sentence should be immaterial. For example, would a trial court satisfy the concerns of Del Percio by informing a defendant that he would get the bottom of the guidelines if he pleads guilty but the top of the guidelines if he goes to trial and is convicted?
Florida's Rules of Criminal Procedure have not yet adopted the current position of the American Bar Association which specifically permits limited judicial participation in plea negotiations. Perhaps there is a reason. It should not matter whether the court uses a stick or a carrot to induce a plea. It is no better constitutionally to offer a reward than it is to threaten punishment in order to get a waiver of defendant's constitutional rights. If one refuses the court's offer and goes to trial and receives a sentence greater than the offer, he has been disadvantaged by exercising his constitutional right not to accept the court's offer and insisting on a trial even though the negotiating procedure is approved by the American Bar Association.
Florida should limit the judge's role in plea negotiation to approving, even pre-approving, the agreements entered into by the parties. In that way, it cannot be said that the court has committed to treat differently those who plead guilty from those who stand trial.
DAUKSCH, J., concurs.
NOTES
[1] All of the cases involve the same trial judge.
[2] The court withheld the imposition of sentence on the remaining count.
[3] See State v. Williams, 277 N.J.Super. 40, 648 A.2d 1148, 1151-52 (Ct.App.Div.1994) (and cases cited therein).
[4] In Corey, the court reasoned:

Whether a plea agreement should occur requires a particularized assessment of numerous factors which is complex for those persons most knowledgeable of the case and most deeply affected by its outcome. Our adversary system of criminal justice assigns the roles of the participants. It is the duty of the prosecuting authority and defense counsel to intimately know the case prior to trial, and ordinarily the trial judge does not gain such insight until all the evidence has been heard. Even then, in most cases, the court is not legally competent to make a final sentencing determination until a presentence investigation has occurred.
826 S.W.2d at 322.
[5] See also State v. Kennedy, 698 So.2d 349 (Fla. 4th DCA 1997); State v. Johnson, 696 So.2d 1328 (Fla. 3d DCA 1997); State v. Honiker, 675 So.2d 681, 682 n. 1 (Fla. 2d DCA 1996); State v. Williams, 616 So.2d 187 (Fla. 4th DCA 1993).
[1] This provision was approved by the Florida Supreme Court shortly before Davis. It seems to embrace the notion that the trial judge should not be involved in sentence negotiations until after the parties reach a tentative agreement. When the supreme court in Davis said "we refrain from condemning the practice per se," we do not believe the court intended to authorize a direct and exclusive agreement between the court and the defendant. We believe instead that it was contemplating the present position of the American Bar Association, which is that the judge, with the consent of both parties, can participate in the sentence discussions to the extent that he or she can indicate what sentence would be acceptable or what concessions would be required. But whether an agreement should be reached on the judge's terms would rest exclusively with the parties. If the parties acquiesce to the judges's terms, then it might be referred to as the judge's agreement when, in effect, it is the parties' agreement pre-approved by the court.
[1] In such case, the judge is asked to approve a sentence that the prosecutor, on behalf of the state and after consultation with the victim (see section 960.001(1)(g), Florida Statutes), urges is appropriate under the circumstances and one which the defendant believes is in his or her best interest. In agreeing to accept the plea agreement, the court is merely stating that based on its present view of the facts (and that view is unlikely to change if there is no trial) and further based on the representation of the defendant's record (to be confirmed by a PSI), the court finds the proposed sentence acceptable. Hence, the court's role as a neutral arbiter is not jeopardized.
[2] I recognize the justification sometimes given that because of the additional matters learned at trial, the initially proposed sentence is no longer appropriate. This is a convincing argument if the court has merely approved the recommendation of the parties based on a proffered fact presentation. It is less convincing if the court has itself participated in determining what sentence would be appropriate under the facts of the case. By claiming that matters revealed at trial have changed the appropriate sentence, it is apparent that the judge was not sufficiently informed at the time he or she proposed the sentence to make a reasonable sentence proposal. In order to avoid the appearance that the new sentence is punitive, the court should indicate at sentencing how the facts revealed at trial differ from its pretrial perception which led to its initial offer.