**COMMONWEALTH of Kentucky,
Petitioner,**

v.

**Honorable Stephen P. RYAN, Judge
Jefferson Circuit Court, Division
Six, Respondent.**

and

**Kimberly Harris, Real
Party In Interest.**

No. 99–SC–318–OA.

Supreme Court of Kentucky.

Aug. 26, 1999.

Rehearing Denied Dec. 16, 1999.

Craig C. Dilger, David M. Lewis, Special Assistant Attorney General, Louisville, for Petitioner.

Frank W. Heft, Jr., Bette J. Niemi, Office of the Jefferson District Public Defender, Louisville, for Real Party In Interest.

KELLER, Justice.

In May of 1997, the Jefferson County Grand Jury indicted Kimberly Harris, the real party in interest, for two counts of capital murder in violation of KRS 507.020. The indictments alleged Ms. Harris intentionally killed two employees of Jefferson Place Nursing Home in the parking lot of that establishment following the termination of her employment. Pursuant to KRS 532.025, the Commonwealth filed notice of its intent to seek the death penalty and identified intentional murders resulting in multiple deaths as the statutory aggravator.

The defendant raised the issue of her competency to stand trial. On August 31, 1998, the trial judge conducted a hearing on the issue of competency and both the Commonwealth and Harris presented evidence. In November of 1998, the trial court issued a ruling finding Harris competent to stand trial and set the case for trial in April of 1999.

Following the trial court's ruling regarding competency, Harris' attorney filed a pleading titled "Motion to Exclude the Death Penalty as a Potential Penalty in this Action for This Mentally Ill Defendant." On March 12, 1999, the trial court, after an evidentiary hearing and over the Commonwealth's objection, granted the motion and entered an order finding Harris suffered from a significant mental illness and excluding the death penalty as a sentencing option. Following its ruling excluding the death penalty, the court allowed Harris to enter a plea of guilty but mentally ill to two counts of intentional murder and set Harris' sentencing for April 15, 1999. The Commonwealth

brought this original proceeding, petitioning the Court for a writ of prohibition to prevent the trial judge from enforcing the order excluding the death penalty.

This Court stayed the proceedings in Jefferson Circuit Court on April 13, 1999 and we now grant the Commonwealth's petition for a writ of prohibition.

■ As the court order which is the subject of this litigation directly affects the imposition of the death penalty, we accept jurisdiction of this matter pursuant to CR 76.36 and the policy regarding death penalty matters announced in *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573 (1990).

■ The decision to issue or deny a writ of prohibition is within the sound discretion of the court. *Rowley v. Lampe*, Ky., 331 S.W.2d 887 (1960). As threshold requirements for granting such relief, the petitioner must demonstrate:

> (1) the lower court is proceeding or about to proceed outside of its jurisdiction and there is no adequate remedy by appeal, or (2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise great injustice and irreparable injury would result. *Tipton v. Commonwealth*, Ky. App., 770 S.W.2d 239 (1989); *Hobson v. Curtis*, Ky., 329 S.W.2d 565 (1959).

We believe this is a case which falls in the second category. The trial court is acting within its jurisdiction. While it appears that the Commonwealth has an adequate remedy by appeal, *Collins v. Commonwealth*, Ky., 973 S.W.2d 50 (1998), we previously issued a temporary stay, and the matter has been fully briefed and argued by the parties. Moreover, the incident on which this indictment is based took place over two years ago, and the interests of justice require that this matter be resolved without further delay. *See, e .g., Allen v. Walter*, Ky., 534 S.W.2d 453, 455 (1976). Accordingly, we address the merits of this matter.

*Plea of Guilty but Mentally Ill*

■ The Commonwealth argues the trial court improperly ruled pretrial that the defendant was mentally ill, and thus implies the trial court should not have accepted a plea of guilty but mentally ill to the charges without the Commonwealth's consent. The Commonwealth describes the trial court's decisions regarding the defendant's mental illness as tantamount to summary judgment, and reminds this Court of precedent which holds summary judgment is improper in criminal proceedings in this state. *See, e.g., Commonwealth v. Hayden*, Ky., 489 S.W.2d 513, 516 (1972); *King v. Venters*, Ky., 595 S.W.2d 714 (1980).

■ We believe our Penal Code and Criminal Rules allow a trial court to accept a plea of guilty but mentally ill without the acquiescence of the Commonwealth. However, we further believe that the trial court is required by statute to make findings of fact with respect to the defendant's mental illness before accepting such a plea. Guilty but mentally ill is listed among the pleas available to a defendant in RCr 8.08:

> A defendant may plead not guilty, guilty or guilty but mentally ill. The court may refuse to accept a plea of guilty or guilty but mentally ill, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. RCr 8.08.

KRS 504.130, the basis for the plea of guilty but mentally ill, further explains the plea and emphasizes the requirement of a factual finding of mental illness:

> (2) If the defendant waives his right to trial, the court may accept a plea of guilty but mentally ill *if it finds that the defendant was mentally ill at the time of the offense.* KRS 504.130 (emphasis added).

■ We are mindful of our opinion in *Commonwealth v. Corey*, Ky., 826 S.W.2d 319 (1992), which held "if the guilty plea has strings attached which limit the sen-

tence which may be imposed by virtue of it, the Commonwealth must be a party to the agreement." *Id.* at 321. As discussed below in connection with our analysis of the trial court's ruling excluding the death penalty from the sentencing alternatives, *Corey* is important to our ultimate disposition of this matter. However, with respect to the issue of acceptance of the plea of guilty but mentally ill, KRS 504.150 explains "[t]he court shall sentence a defendant found guilty but mentally ill at the time of the offense . . . in the same manner as a defendant found guilty. . . ." *Id.* The statute, of course, further requires mental health treatment be provided to the defendant found guilty but mentally ill. *Id.* However, we see no inherent limitation on the sentence which may be imposed when a trial judge accepts a defendant's plea of guilty but mentally ill over the Commonwealth's objection.

We find of particular importance the above-quoted and emphasized part of KRS 504.130(2) which makes the trial court's factual finding that the defendant was mentally ill at the time of the offense a prerequisite to the acceptance of a plea of guilty but mentally ill. The face of the statute allows a defendant to enter a plea of guilty but mentally ill providing the judge finds the defendant was guilty but mentally ill at the time of the offense. Clearly, if the defendant's mental condition is contested by the Commonwealth, the statute contemplates an evidentiary hearing of the type required in connection with a determination of whether a defendant is competent to stand trial. KRS 504.100(3). The Commonwealth may litigate the mental illness issue at this hearing. If requested, the Commonwealth may require a defendant who has expressed an intention to enter a plea of guilty but mentally ill to submit to a psychiatric examination. In the matter now before the Court, the trial judge held a hearing on defense counsel's motion to exclude the death penalty because of mental illness, and nothing in the record indicates that the trial court was clearly erroneous in its conclusion following this hearing that the defendant suffered from a mental illness at the time of the offense. Accordingly, we find the trial court's acceptance of a plea of guilty but mentally ill was not error and provides no basis for the issuance of a writ of prohibition.

### Exclusion of Death Penalty as Sentencing Option

■ The second argument made by the Commonwealth asks us to examine the trial court's decision to exclude the death penalty as a sentencing option. The Commonwealth asks this Court to issue a writ of prohibition to prevent the matter from proceeding to sentencing and final judgment. We find clear error in the trial court's pretrial rulings regarding the propriety of the death penalty and the manner in which sentence would be determined. Accordingly, the writ of prohibition shall be issued.

RCr 9.26 provides, "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Commonwealth." We held this language allows the Commonwealth to insist upon a sentencing hearing before a jury to determine the sentence in a criminal matter and requires the Commonwealth's consent to sentencing by the court without a jury's recommendation. *Commonwealth v. Johnson*, Ky., 910 S.W.2d 229 (1995); *Commonwealth v. Collins*, Ky., 933 S.W.2d 811 (1996).

In *Commonwealth v. Johnson*, this Court held the Commonwealth is entitled to present its case for punishment to a jury prior to imposition of final judgment and reversed a sentence imposed by a judge who refused to empanel a jury for a sentencing hearing in a capital case. *Johnson, supra.* The Court outlined some of the rationale behind its construction of RCr 9.26, especially in situations involving the possibility of capital punishment:

In death penalty cases, jury sentencing is deeply ingrained in Kentucky law. By virtue of statutes, rules of Court, and decisions, participation by a jury in this momentous governmental event has been regarded as indispensable except upon concurrence of all involved. While the importance of a defendant's right to insist upon jury sentencing is obvious, the significance of the public's right of participation in the process should not be taken lightly. As the death penalty is a possible punishment for only the most heinous of crimes, and with due regard for the legitimate public interest in law enforcement, the verdict of a jury should be heard by the court prior to final sentencing except upon agreement of all parties. *Id* . at 231 (citations deleted).

■ In addition to denying the Commonwealth a right to present its case for sentencing to a jury, the trial court in the matter before this Court also ruled pretrial that the death penalty was inappropriate and removed it from consideration as a sentencing option prior to the defendant's plea of guilty but mentally ill. The defendant directs us to our opinion in *Commonwealth v. Smith*, Ky ., 634 S.W.2d 411 (1982), where we affirmed a trial court's decision not to instruct a jury on the death penalty as a possible punishment following a jury verdict of guilty to murder. *Id.* We feel that the limited holding in *Smith* does not govern the case before us. We hold a trial court may not rule out the possibility of the death penalty on the basis of a pretrial factual determination regarding the defendant's mental health.

The defendant in *Smith* was found guilty of murder, but as the opinion refers to someone else as the "triggerman," he was liable only as an accomplice. The "triggerman" entered a guilty plea and received the minimum sentence of twenty years. *Id.* at 413. The trial judge's ruling excluding the death penalty was premised on his belief it would constitute a disproportionate imposition of the death penalty

if an accomplice were sentenced to death while the "triggerman" received the minimum sentence. *Id.* While *Smith* holds the trial judge has some power to relieve the jury of consideration of the death penalty, our other opinions on this issue suggest that the trial court's authority in this area is not broad enough to embrace the actions of the judge in the case before us.

In *Commonwealth v. Corey*, Ky., 826 S.W.2d 319 (1992), we addressed a situation where the trial court entered an order allowing two defendants to plead guilty and reserve the authority to withdraw their pleas if the court chose to impose a sentence of death *or life without parole for* twenty-five (25) years. *Id.* at 320. We held the trial court's stated purpose of avoiding a protracted trial by jury was not a legally permissible reason to withdraw the death penalty from consideration, in part because: "[h]ere, the decision of the trial court as to the appropriate punishment will require a broad factual analysis, where in *Smith*, the conclusion was mandated. by the Court's view of the law." *Id.*

We also emphasized in *Corey* that a pretrial determination of a matter as significant as sentencing phase instructions in a capital case was suspect:

. . . only after the evidence is presented does the court have a right to determine whether the evidence is sufficient under the law to sustain a conviction and what instructions should be given to the jury. . . . *Id.*

Certainly, a judge who makes pretrial, binding decisions regarding sentencing does so with less information available to him than those who make sentencing decisions after trial by jury, plea bargaining, or an unconditional guilty plea:

When sentence is imposed after trial and receipt of the verdict, the court has benefit of having heard the evidence and the recommended punishment from the jury. Upon sentence pursuant to a plea agreement, the court may rely in part upon the agreed disposition as fairly

serving the interests of both the Commonwealth and the defendant. When the defendant enters an unconditional guilty plea, the trial court may consider all relevant information and the full range of punishment without regard to any tentative determination it may have made as to the appropriate punishment and the possibility that the plea will be withdrawn. *Id.*

*Corey* explains *Smith*'s holding must be limited because underinformed sentencing decisions upset the balance of authority inherent in the judicial system:

It is the duty of the prosecuting authority and defense counsel to intimately know the case prior to trial, and ordinarily the trial judge does not gain such insight until all the evidence has been heard.... For the trial court to determine the maximum sentence which may be imposed without a right of plea withdrawal, absent the concurrence of the Commonwealth, prior to trial, and without the benefit of a presentence investigation, radically alters the substance of the process. *Id.* (citation deleted).

This Court also dealt with the issue of a trial court which issued a pretrial order excluding the death penalty as a sentencing option in *Perry County Fiscal Court v. Commonwealth,* Ky., 674 S.W.2d 954 (1984). In *Perry County Fiscal Court,* the Commonwealth petitioned the Court of Appeals for a writ to prohibit the trial judge from enforcing its order setting a date for a homicide trial but excluding the death penalty as a possible sentence because of the unwillingness of the fiscal court to pay the fees of two expert witnesses for the defense. *Id.* at 956. The Court of Appeals found the writ of prohibition appropriate and we affirmed and adopted its opinion. *Id.* at 955–56. The respondents/appellees in *Perry County Fiscal Court* also relied upon the language of *Smith* to justify the trial court's action, but we were unpersuaded that the stated basis approached "as significant a reason"

as the proportionality rationale in *Smith. Id.*

Here, of course, the basis for the pretrial exclusion of the death penalty as a sentencing option was not to avoid hassle or disputes over the payment for experts. The trial judge's Findings of Fact and Order indicates a lofty list of reasons:

Based upon the record in its entirety, including the uncontroverted evidence before this Court that Kimberly Harris suffers from a significant mental illness, the Court finds under the principles of fundamental fairness, due process and proportionality it would be unconscionable to impose a death sentence upon this particular defendant. Kimberly Harris is an emotionally disturbed, mentally ill, 23–year–old female who has no prior criminal history. Pursuant to its authority and discretion, the Court declines to engage in an exercise of futility by submitting the option of the death penalty to the jury in this case.

Despite the judge's assertion that he made his ruling on the basis of "fundamental fairness, due process and proportionality," we find that his decision to exclude the death penalty as a potential sentence does not fall within his authority. This Court's *Corey* opinion guides our decision because we believe the trial court's pretrial conclusion regarding the defendant's mental illness is not the type of rationale we had in mind when we held "the court should not be required to entertain an exercise in futility and preside over a hearing of any duration when it will ultimately decide, for as significant a reason as expressed in this record, [that the death penalty is inappropriate]." *Smith, supra* at 414. First, although the trial court explains itself in constitutional terms such as "proportionality," this judge undertook a broad factual analysis of the type *Corey* distinguishes from the legal conclusion reached by the trial court in *Smith, supra.* In *Smith,* the court had personal knowledge of the co-defendant shooter's guilty plea and minimum sentence, and decided, as a matter of

law, that it would be disproportionate to expose an accomplice to the death penalty in light of the shooter's sentence. Here, the trial court conducted a pretrial evidentiary hearing for the purpose of determining whether the defendant was mentally ill at the time of the commission of the offense. Certainly, those findings of fact are appropriate and required when the trial court accepts a plea of guilty but mentally ill, but we believe that the judge's decision to exclude the death penalty on the basis of those findings of fact does not fall within his authority. Second, we note that the decision not to submit instructions on the death penalty to the *Smith* jury came after the trial judge had an opportunity to hear all of the evidence during the guilt/innocence phase of the trial. In the matter before the Court, the trial judge entered an order excluding the death penalty on the basis of Harris' mental illness without hearing any of the Commonwealth's evidence, including evidence which could constitute aggravation pursuant to KRS 532.025. We believe that a decision of this magnitude cannot be made without the true test of the adversarial process and we are concerned incomplete decision making is inherent in pretrial determinations of the appropriate penalty range. *Corey, supra* at 320.

We are unwilling to equate the decision in this case to exclude the death penalty on the basis of unrebutted evidence regarding one statutory mitigating factor, mental illness, without evaluation of the Commonwealth's evidence regarding aggravating circumstances, with the trial court's decision in *Smith,* supra. *Smith* simply does not embrace the full spectrum of possible pretrial factual rulings dressed up in constitutional language. Accordingly, we conclude that the trial court's decision to exclude the death penalty as an option and set the matter for sentencing was erroneous.

For the reasons set forth above, we grant the relief requested by the petitioner and issue a writ prohibiting the trial court from sentencing the real party in interest without first affording the Commonwealth the opportunity for a jury sentencing hearing with the full range of penalties permitted by law and supported by the evidence.

All concur.