COMMONWEALTH of Kentucky,
Appellant

v.

Robert GUERNSEY, Appellee

and

Commonwealth of Kentucky, Appellant

v.

Trustin Jones, Appellee

2015-SC-000259-TG AND
2015-SC-000261-TG
(2015-CA-000722-MR AND
2015-CA-000723-MR)
2015-SC-000260-TG AND
2015-SC-000262-TG
(2015-CA-000722-MR AND
2015-CA-000723-MR)

Supreme Court of Kentucky.

RENDERED: OCTOBER 20, 2016

COUNSEL FOR APPELLANT: James Hays Lawson, William Robert Long, Jr., Assistant Attorney General, Office of the Attorney General, Andy Beshear, Attorney General of Kentucky

COUNSEL FOR APPELLEE, ROBERT GUERNSEY: Russel James Baldani, Tucker Richardson, III, Baldani, Rowland & Richardson

COUNSEL FOR APPELLEE, TRUSTIN JONES: Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy

OPINION OF THE COURT BY
JUSTICE HUGHES

This case, on transfer from the Court of Appeals pursuant to Kentucky Rule of Civil Procedure (CR) 74.02, presents a challenge to an order of the Fayette Circuit Court which excluded the death penalty as a potential sentencing option for Robert Guernsey and Trustin Jones. Specifically, on the motions of Guernsey and Jones and prior to trial, the circuit court concluded that the death penalty would be a disproportionate punishment in this prosecution for murder and first-degree robbery. We find error in the circuit court's pretrial ruling excluding the death penalty and, accordingly, remand this case to the Fayette Circuit Court with directions to vacate its order.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, the Fayette County Grand Jury indicted Robert Guernsey for murder and first-degree robbery and Trustin Jones for murder, first-degree robbery, and tampering with physical evidence. Two months later, the Commonwealth, under Kentucky Revised Statute (KRS) 532.025, filed notice of intent to seek the death penalty against Guernsey and Jones identifying murder committed in the course of first-degree robbery as the statutory aggravator.

In April 2015, Jones moved to preclude the Commonwealth from seeking the death penalty as a possible sentencing option in his trial.[1] Thereafter, the circuit court con-

---

1. Guernsey had previously filed a motion to exclude the death penalty in August 2014. He

ducted an evidentiary hearing on Jones's motion, which Guernsey orally joined. After hearing evidence about the proof to be presented at trial and argument from counsel, the circuit court granted the motion and entered an order excluding the death penalty as disproportionate.

In its order, the circuit court emphasized the frequency with which it had conducted capital trials. According to the circuit court, over 75 percent of the capital cases that it presided over at trial had featured first-degree robbery as the aggravating circumstance and more than half of those cases involved the sale or possession of narcotics. The circuit court observed that each of those trials resulted in a jury recommendation of a term of years, even in those cases where the jury returned a conviction for murder.

With this background established, the circuit court then briefly summarized the facts of the underlying case. After concluding that the "facts of the case are not unique," the circuit court focused on the drug trafficking aspect of the anticipated proof. Specifically, the circuit court noted that: the victim had a significant amount of narcotics on his person at the time of his death; the victim was in contact with more than one individual who had been labeled as a "drug dealer"; and messages between the victim and those individuals concerned the resupply of narcotics.

In its order, the circuit court offered examples of death eligible cases in which the jury recommended a penalty other than death. In the first case, *Ordway v. Commonwealth*, 391 S.W.3d 762 (Ky. 2013), Ordway and two men were traveling in a car from Louisville to Lexington to engage in the sale of narcotics. According to Ordway, a dispute arose and he proceeded to kill the two men allegedly in self-protection. *Id.* at 772. Ordway was initially sentenced to death, but that sentence was reversed by this Court. *Id.* at 771–772. After a retrial, in which Ordway was again eligible for a death sentence, he was sentenced to life without the possibility of parole for a period of twenty-five years.[2] The circuit court also referenced three cases, which were capital cases that did not involve narcotics. In each of those cases, according to the circuit court, the jury declined to recommend the imposition of the death penalty.[3] The circuit court finally referenced one recent capital case from Fayette Circuit Court that it did not personally preside over, *Commonwealth v. Joel Searcy*.[4] While Searcy was charged

contended that the death penalty would be unconstitutional as applied to him because he was not present when the shooting occurred and did not intend for the victim to be shot, while the Commonwealth countered that Guernsey could be subject to the death penalty as an accomplice who persuaded Jones in the first instance to rob the victim, Pelphrey, so that Guernsey and Jones could split the proceeds. It was during the course of that robbery that Jones shot and killed Pelphrey. In addressing the motion, the circuit court cited *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), for the proposition that in order to have sufficient culpability as an accomplice to merit imposition of the death penalty there must be "major participation in the felony committed, combined with reckless indifference to human life." The trial court concluded that the measure of Guernsey's culpability "must be determined by the jury." Consequently, it denied the motion.

2. That sentence was recently affirmed by this Court in an unpublished opinion. *Ordway v. Commonwealth*, 2014–SC–000535–MR, 2016 WL 5245099 (Ky. Sept. 22, 2016).

3. The circuit court's order does not offer sufficient identifiers in its description of these three cases for the Court to identify which cases are being referenced.

4. Searcy's sentence was affirmed by this Court in an unpublished opinion. *Searcy v. Commonwealth*, 2015–SC–000357–MR, 2016 WL 4487507 (Ky. Aug. 25, 2016).

with a capital offense, he was convicted of a lesser included offense, and received a sentence of twenty-five years' imprisonment.

With this background, the circuit court stated that a death sentence has never "been recommended by a jury and upheld on appeal in a case involving actual or suspected drug trafficking." According to the circuit court the reason for the absence of death sentences in cases involving the trafficking of narcotics is that "[t]he death penalty is the ultimate punishment and should be reserved and sought in cases involving only the most egregious set of facts one could possibly imagine."

The circuit court then noted while a Commonwealth's Attorney has discretion by statute to determine whether to seek the death penalty in all cases that statutorily qualify, the current Fayette County Commonwealth's Attorney seeks the imposition of the death penalty for every case that meets the statutory criteria. In the circuit court's view, this practice unnecessarily consumes time and resources that could be spent on other cases. Finally, the circuit court, relying on its history on the bench, noted that it had:

> heard some of the most egregious facts resulting in the loss of innocent life that do not trigger the 'statutory' definition of a capital case because of the absence of an aggravator. In those cases, defendants have received a term of years or at most life. In the capital cases involving heinous acts or egregious facts, a death qualified jury has imposed a term of years or at most life without the possibility of parole following a conviction of intentional murder.

"Based on this history," the circuit court concluded that death sentences in the underlying case for either Guernsey or Jones would be disproportionate.

Subsequently, the Commonwealth filed an interlocutory appeal in the Court of Appeals pursuant to Kentucky Rule of Criminal Procedure (RCr) 12.04 and KRS 22A.020(4). We accepted transfer as the issue raised is of great and immediate public importance and arose in capital litigation, an area exclusively within the appellate jurisdiction of the Kentucky Supreme Court. *Skaggs v. Commonwealth,* 803 S.W.2d 573 (1990).

## ANALYSIS

### I. The Circuit Court Erred by Concluding Pretrial that the Imposition of the Death Penalty Would be a Disproportionate Penalty.

The Commonwealth maintains that the circuit court erred in concluding prior to trial that the death penalty would be disproportionate in this prosecution for murder and first-degree robbery, a circumstance in which the Kentucky General Assembly has specifically authorized capital punishment. Additionally, to the extent the circuit court focused on the actual or suspected drug activity involved in this case as a fact scenario militating against a death sentence, the Commonwealth insists the circuit court clearly erred. In its Order Excluding Death Penalty, the circuit court concluded that, based on its knowledge of the facts following a pretrial hearing, capital punishment would be constitutionally disproportionate in this particular case and perhaps also comparatively disproportionate pursuant to KRS 532.075(3). The Commonwealth maintains that in either sense of disproportionality the circuit court erred, at least at this juncture in the proceedings, and its order should be set aside. On *de novo* review of the purely legal issues presented, *Osborne v. Commonwealth,* 185 S.W.3d 645 (Ky. 2006), we agree. Ultimately this case

turns on the authority of a trial court to exclude capital punishment in a particular case where the Commonwealth has given notice of its intent to seek the death penalty and, more specifically, whether that authority can be exercised prior to hearing the evidence presented in the guilt phase of the trial. Before addressing that ultimate question, we briefly address the two proportionality concepts applicable in capital prosecutions.

■ The Eighth Amendment to the United States Constitution mandates that a death sentence be proportionate to the crime the defendant committed. *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (A death sentence is unconstitutional if it "is grossly out of proportion to the severity of the crime."). On review the United States Supreme Court has focused on "the gravity of the offense and the severity of the penalty" in evaluating the appropriateness of a death sentence for a particular offense. *Pulley v. Harris,* 465 U.S. 37, 42–43, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). *See also, Getsy v. Mitchell,* 495 F.3d 295 (6th Cir. 2007) ("Proportionality as defined by the Supreme Court evaluates a particular defendant's culpability for his crime in relation to the punishment that he has received.").

In addition to this constitutional requirement for an inherently proportional sentence, KRS 532.075 mandates comparative proportionality review in all Kentucky cases in which the death penalty is imposed. This type of review is performed to ensure that a death sentence is not disproportionate relative to other sentences imposed for similar crimes.[5] Under KRS 532.075(3)(c), the Kentucky Supreme Court is required to consider "[w]hether

the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

■ Comparative proportionality review is not mandated by the Eighth Amendment, rather it is a requirement imposed solely by statute. *Pulley,* 465 U.S. at 43–44, 104 S.Ct. 871. *See also, Bowling v. Parker,* 344 F.3d 487, 521 (6th Cir. 2003) ("The Supreme Court has held that the Constitution does require proportionality review, but that it only requires proportionality between the punishment and the crime, not between the punishment in this case and that exacted in other cases."); *Caudill v. Commonwealth,* 120 S.W.3d 635, 678 (Ky. 2003), *as modified* (Feb. 5, 2004) ("There is no constitutional right to a [comparative] proportionality review.").

**A. The Circuit Court Erred by Conducting a Comparative Proportionality Review.**

■ The circuit court's order reflects a comparative proportionality review of sorts. As part of its rationale for excluding the death penalty, the circuit court considered the capital cases over which it had presided, a recent capital case from Fayette County, and other factually similar capital cases, allegedly statewide. The court then briefly outlined what it understood would be the Commonwealth's proof at trial. This review of other cases *vis-à-vis* the Guernsey/Jones case was error as comparative proportionality review is a function reserved solely to this Court as a matter of law, and it occurs only after the facts have been presented at trial and a death sentence has actually been imposed.

---

**5.** KRS 532.075 was modeled after Georgia's comparative review statute which was declared constitutional in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). *See Ice v. Commonwealth,* 667 S.W.2d 671, 679 (Ky. 1984).

■ As discussed above, KRS 532.075 sets forth the process by which the Supreme Court will review the imposition of the death penalty. In KRS 532.075(3)(c), the General Assembly mandated that this Court engage in a comparative proportionality review to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." In interpreting a statute, we take care to see "that the intention of the legislature should be ascertained and given effect." *Jefferson Cty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (quoting *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009)).[6] A plain reading of KRS 532.075 and the absence of any similar language in sentencing statutes applicable to the circuit court demonstrate that our legislature gave the Kentucky Supreme Court sole responsibility for conducting a comparative proportionality review.

Despite the clear language of KRS 532.075, this is not the first time this Court has encountered the argument that the trial court may (or even should) conduct its own comparative proportionality review. In *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1986), McClellan was sentenced to death following conviction for murder, first-degree burglary, and kidnapping. On appeal, McClellan alleged that the circuit court erred by failing to consider the comparative appropriateness of the death penalty. *Id.* at 472. Specifically, McClellan argued that the circuit court should have compared the "nature of the acts committed by appellant with the nature of acts which were committed by others who escaped the death penalty by negotiated pleas of guilty or by jury verdicts imposing a penitentiary sentence." *Id.* In rejecting McClellan's claim, this Court noted that the circuit court had the discretion "to reduce the sentence [of death recommended by the jury] to a term of imprisonment within the limits prescribed by law." *Id.* (citing *Smith v. Commonwealth*, 634 S.W.2d 411 (Ky. 1982); *Gall v. Commonwealth*, 607 S.W.2d 97 (Ky. 1980)). However, the Court explained that in the exercise of that discretion the circuit court is not required to conduct a comparative proportionality review. *Id.* at 473. In Kentucky, in the event that a death sentence is imposed, the Supreme Court is charged with conducting the proportionality review mandated by KRS 532.075(3)(c). *Id.*

Based on the clear language of KRS 532.075(3)(c) and *McClellan*, it is indisputable that comparative proportionality analysis is a statutory function reserved solely to this Court. There is obvious logic in the assignment of this review to the seven-member High Court, a court uniquely equipped to consider information on all relevant cases statewide since January 1, 1970. See KRS 532.075(6). Despite the circuit court's best efforts to conduct a thorough comparative proportionality analysis, it is clear that the circuit court's review was largely based on personal experiences presiding over capital trials in Fayette County. In contrast, comparative proportionality reviews conducted by this Court pursuant to KRS 532.075 appropriately encompass a broader geographic area (all of Kentucky) and the appropriate time frame (all cases after January 1, 1970). Accordingly, the issue of whether a death sentence is comparatively proportional is one left to this Court's review, if and when, that sentence has actually been imposed.[7]

**6.** Such a review is in keeping with the view of the legislature as espoused in KRS 446.080(1), which states "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature ...."

**7.** In support of their argument that imposition of the death penalty would be dispropor-

## B. The Circuit Court Erred in Conducting an Inherent Proportionality Review Prior to the Guilt Phase of the Trial.

While the comparative proportionality review mandated by KRS 532.075(3)(c) is solely within the province of this Court, the circuit court retains the authority to determine whether a death sentence would be inherently disproportionate. However, the exercise of that authority is only proper once the Commonwealth has had the opportunity to present all of its evidence at trial.[8] The case cited by the circuit court in its order actually reflects this very point.

In *Smith*, 634 S.W.2d 411, the circuit court, after the conclusion of the guilt phase of a murder trial, determined that the imposition of the death penalty would be disproportionate. Accordingly, the circuit court refused to permit the Commonwealth to introduce, during the penalty stage of the trial, the aggravating circumstance of murder committed during the course of first-degree robbery. *Id.* at 413. The facts presented by the Commonwealth at trial established that Smith had met up one evening with two men, Charles Johnson and the victim, in order to take the victim to a prostitute. *Id.* at 412. During their trip, the victim, who was driving, was instructed by Johnson to pull the car off to the side of the road, at which point Johnson drew a handgun and informed the victim that he was being robbed. *Id.* In response, the victim pulled out his own handgun. Upon seeing that handgun, Smith shouted a warning to Johnson, who shot and killed the victim. *Id.*

Subsequently, Smith and Johnson were jointly indicted by the Jefferson County Grand Jury for murder, with Smith later indicted for being a second-degree persistent felony offender. *Id.* at 411–12. Prior to trial, Johnson pled guilty to the murder charge and cooperated with the authorities to receive a twenty-years sentence, the minimum sentence available. Smith, who pled not guilty, was convicted of murder after a jury trial. *Id.* Prior to the start of the penalty phase, the circuit court ruled *sua sponte* that the death penalty would be disproportionate under the facts present in the case. Particularly troubling to the circuit court was that while the "triggerman" had pled guilty and received the minimum sentence, his accomplice Smith was eligible for the death penalty. *Id.* After excluding the death penalty, the Court sentenced

---

tionate, Jones and Guernsey cite the Court to recent polling on national support (or more precisely, lack of support) for the death penalty and statistics reflecting the declining number of death sentences nationwide. Drew DeSilver, *America's death row population is shrinking* (Apr. 22, 2015), http://www. pewresearch.org/fact-tank/2015/04/22/ americas-death-row-populationis-shrinking/. It is not this Court's role to render judgment on the popularity or general propriety of the death penalty, but rather to determine whether the circuit court's ruling is supported by the relevant statutes and case law. As our predecessor court stated in *Gathright v. H.M. Byllesby & Co.*, 154 Ky. 106, 157 S.W. 45, 52 (1913), "[i]t is to be remembered, however, that courts are interpreters and not makers of the law; it is not the province of the courts to usurp the functions of the Legislature ... by questioning the wisdom of their authorized acts."

8. The Commonwealth argues that the circuit court's inherent proportionality ruling violated separation of powers because by finding the imposition of a sentence of death disproportionate for the crime of murder committed during the course of first-degree robbery in this case the circuit court usurped legislative prerogative regarding penalty range. Specifically, the Commonwealth contends that the circuit court's analysis focused on actual or suspected drug activity as opposed to the aggravating factors set forth by the legislature in KRS 532.025(2)(a). Having concluded that the circuit court erred in conducting an inherent proportionality review prior to trial, we need not address these specific arguments.

Smith to thirty-years' imprisonment. *Id.* at 412.

On cross-appeal,[9] the Commonwealth asked the Court to address whether the circuit court erred in barring the introduction of the aggravating circumstance of first-degree robbery during the penalty phase. *Id.* at 413. The Court viewed the question before it as whether the circuit court has the inherent power to relieve the jury of any consideration of the death penalty. Relying on KRS 532.025, the Court concluded that "the ultimate decision of penalty is within the province of the trial judge." *Id.* Accordingly, the Court held that the circuit court "should not be required to entertain an exercise in futility and preside over a hearing of any duration when it will ultimately decide, for as significant a reason as expressed in this record, that such recommendation by the jury would have been, in the trial court's opinion, 'disproportionate.'" *Id.* at 413–14.

While the *Smith* Court acknowledged that the circuit court had the authority to relieve the jury of consideration of the death penalty on the facts presented in that case, the limits of that power were later addressed by the Court in *Commonwealth v. Ryan*, 5 S.W.3d 113 (Ky. 1999), a writ case. In *Ryan*, prior to trial the circuit court entered an order excluding the death penalty as a sentencing option because the defendant suffered from a significant mental illness. *Id.* at 114. The defendant, Kimberly Harris, had been indicted for two counts of murder for the killing of two former co-workers shortly after the termination of her employment. *Id.* After the indictment and pursuant to KRS 532.025, the Commonwealth filed notice of its intent to seek the death penalty, with

intentional murders resulting in multiple deaths as the statutory aggravator. *Id.*

The trial court conducted a competency hearing at which both the Commonwealth and defense introduced proof and then entered an order finding Harris competent to stand trial. However, prior to trial the circuit court concluded that the defendant was mentally ill and excluded the death penalty as a sentencing option. The circuit court then permitted Harris to enter a plea of guilty but mentally ill to two counts of intentional murder. *Id.* The Commonwealth sought a writ of prohibition to prevent the circuit court from enforcing its order excluding the death penalty. *Id.* at 115.

On appeal, this Court found clear error in the actions of the circuit court and granted the Commonwealth's request for a writ of prohibition. *Id.* at 116. The Court concluded that 'the circuit court was not permitted to "rule out the possibility of the death penalty on the basis of a pretrial factual determination regarding the defendant's mental health." *Id.* When directed to its prior opinion in *Smith*, the Court stated "[w]hile *Smith* holds the trial judge has some power to relieve the jury of consideration of the death penalty, our other opinions on this issue suggest that the trial court's authority in this area is not broad enough to embrace the actions of the judge in the case before us." *Id.*

To reach this conclusion, the *Ryan* Court heavily relied on the case of *Commonwealth v. Corey*, 826 S.W.2d 319 (Ky. 1992). In *Corey*, the circuit court entered an order allowing two defendants charged with murder to plead guilty while reserving their right to withdraw their pleas if the circuit court, upon review of relevant sentencing information, elected to impose a

**9.** This Court construed the cross-appeal as a request for certification of the law pursuant to

§ 115 of the Kentucky Constitution.

sentence of death or life without the possibility of parole for twenty-five years. *Id.* at 320. In vacating the circuit court's order, this Court observed:

> Our adversary system of criminal justice assigns the roles of the participants. It is the duty of the prosecuting authority and defense counsel to intimately know the case prior to trial, and ordinarily the trial judge does not gain such insight until all the evidence has been heard. Even then, in most cases, the court is not legally competent to make a final sentencing determination until a presentence investigation has occurred. For the trial court to determine the maximum sentence which may be imposed without a right of plea withdrawal, absent the concurrence of the Commonwealth, prior to trial, and without benefit of a presentence investigation, radically alters the substance of the process.

*Id.* at 322. (Citation deleted). The *Ryan* Court agreed with this proposition, noting that *Smith's* holding was limited and "underinformed sentencing decisions upset the balance of authority inherent in the judicial system." 5 S.W.3d at 118.

Additionally, the *Ryan* Court emphasized that the decision in *Smith* to not submit jury instructions on the death penalty occurred only after the circuit court had heard all of the Commonwealth's evidence during the guilt phase of the trial. *Id.* at 119. In contrast, the circuit court in *Ryan*, excluded the death penalty after the competency hearing but prior to hearing the Commonwealth's evidence regarding the crime. *Id.* The *Ryan* Court determined that a decision regarding the imposition of the death penalty "cannot be made without the true test of the adversarial process and we are concerned incomplete decision making is inherent in pretrial determinations of the appropriate penalty range." *Id.* (citing *Corey,* 826 S.W.2d at 320). The Court

unanimously concluded that the circuit court's decision to exclude the death penalty was erroneous.

As in *Ryan,* the decision to exclude the death penalty in this case was reached pretrial and before the circuit court had the opportunity to hear the actual evidence in the case. This was erroneous. While the circuit court has the authority to determine whether a death sentence would be inherently disproportionate, the exercise of that power is proper only after the circuit court has heard all of the evidence relevant to the indicted charges, evidence subjected to the adversarial process in the guilt phase of the trial.

Guernsey and Jones contend that the circuit court's actions did not run afoul of *Corey* and *Ryan* because those cases simply stand for the proposition that the circuit court is not permitted to exclude the death penalty prior to trial where doing so would require fact finding on matters which the Commonwealth contests. The Appellees contend that the circuit court did not engage in prohibited fact finding on contested matters, but rather accepted as true all of the Commonwealth's factual allegations. They analogize the circuit court's actions as akin to an order on a motion for summary judgment, wherein the court draws a legal conclusion after construing the facts in a light most favorable to the non-moving party.

We disagree with this characterization of the circuit court's actions and this interpretation of *Corey* and *Ryan*. First, as noted by the Commonwealth the analogy to summary judgment is a flawed one because summary judgment is unavailable in the criminal context in Kentucky. *See Commonwealth v. Hayden,* 489 S.W.2d 513, 516 (Ky. 1972). Second, it is clear that the circuit court's ruling was not a straightforward application of law, but rather required evaluation of the available

facts. The circuit court's order specifically notes that the "[a]pplicability of the statute notwithstanding, the Court must now determine based on the facts of this case, whether a death sentence in this case for either defendant would be disproportionate."

Finally, in both *Corey* and *Ryan*, in admittedly different contexts, this Court reversed the circuit court for making a judgment regarding appropriate sentencing prior to hearing all available evidence at trial. That is precisely what occurred in the case at bar, when the circuit court excluded the death penalty as a sentencing option prior to trial. In so doing, the circuit court clearly erred.[10]

## II. The Commonwealth Did Not Forfeit the Right to Interlocutory Review of the Issue Presented.

Lastly, although the Appellees defend the circuit court's ruling on the merits, they also raise an argument that the Commonwealth should be barred from taking an appeal in this case. Specifically, they contend that during the hearing on the Appellees' motion, the Commonwealth admitted in the following exchange that the circuit court had the discretion to exclude the death penalty:

Circuit Court: And so your answer to my question is no there's no prohibition under the law that you're aware of that the court cannot exercise its discretion as it has done in the past and remove the death penalty with the Commonwealth being able to proceed with the other two penalties for aggravators that would not be available in a non-capital case?

Commonwealth: Correct. I think the court does have that discretion. That is correct.

Guernsey and Jones argue that the Commonwealth's statement bars this appeal under the long standing proposition that a party "may only present those issues that were fully presented to the trial court and, further, may not bring forward new legal grounds on appeal to challenge those errors." *Henderson v. Commonwealth*, 438 S.W.3d 335, 343 (Ky. 2014) (citations omitted).

■ We disagree with the Appellees' characterization of what occurred in the circuit court. Clearly, the authority of the circuit court to exclude the death penalty prior to trial over the objection of the Commonwealth was squarely presented to the court. In response to being asked by the circuit court if the Commonwealth was aware of any "prohibition under the law" that would bar it from excluding the death penalty pretrial, the assistant Commonwealth's attorney acknowledged that she was unaware of any controlling precedent but "thought" the trial court had such discretion. The Commonwealth's response was an accurate statement of the state of the law, given that the case at bar constitutes a case of first impression, *i.e.*, there is no prior case law directly addressing the authority of a circuit court judge to exclude the death penalty as a disproportionate sentencing option pretrial based on the anticipated proof as to the facts and circumstances surrounding the crime. While the Commonwealth could have argued that the circuit court's proposed exclusion of the death penalty was barred due to a logical extension of *Smith, Ryan,* and *Corey*, its response to the circuit court's

10. Additionally, in support of his argument, Guernsey suggests that this Court review three decisions, *State v. McCrary*, 97 N.J. 132, 478 A.2d 339 (1984), *State v. Ogden*, 118 N.M. 234, 880 P.2d 845 (1994), and *State v. Wat-* son, 310 N.C. 384, 312 S.E.2d 448 (1984), which address in part the appropriateness of pretrial hearings concerning the death penalty. We decline to do so, because precedent from this Court resolves this case.

question about the existence of a "prohibition under the law" was accurate, at least to the extent it conceded no controlling case directly on point. The Commonwealth's acknowledgement of the current state of case law and ensuing incorrect thought ("I think the court does have that discretion") did not forfeit the Commonwealth's right to appeal the ruling of the circuit court.

## CONCLUSION

While Guernsey and Jones correctly note that the death penalty has fallen into disfavor in recent years, it remains a viable penalty in Kentucky authorized by our legislature in specific types of cases, including those in which the defendant is charged with committing murder in the course of the commission of first-degree robbery. The Fayette County Grand Jury indicted the Appellees for those very offenses, and the Commonwealth, as is its statutory right, subsequently noticed its intent to seek the death penalty. Although at the conclusion of trial, should the jury recommend the death penalty for either of the Appellees, the circuit court will have discretion to determine whether that sentence is constitutionally proportionate, there is no authority for exercising that discretion pretrial before all relevant evidence is actually heard. Accordingly, the Fayette Circuit Court's Order Excluding the Death Penalty is vacated and this matter is remanded for further proceedings consistent with this Opinion.

All sitting. All concur.