# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED:  AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0062-MR
2022-SC-0064-TG

COMMONWEALTH OF KENTUCKY                                              APPELLANT


V.           ON APPEAL FROM CLAY CIRCUIT COURT
             HONORABLE OSCAR GAYLE HOUSE, JUDGE
                       NO. 12-CR-00128-001


JOSHUA MORSCH                                                          APPELLEE


AND
                        2022-SC-0132-TG


COMMONWEALTH OF KENTUCKY                                              APPELLANT


V.           ON APPEAL FROM CLAY CIRCUIT COURT
             HONORABLE OSCAR GAYLE HOUSE, JUDGE
                       NO. 12-CR-00128-002


KATHY STEWART                                                         APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>VACATING AND REMANDING</u>**

This case, on transfer from the Court of Appeals pursuant to CR[1] 74.02,

presents a challenge to the Clay Circuit Court orders which removed the death

---

[1] Kentucky Rules of Civil Procedure.  The provisions of CR 74.02 are now
contained in Rule of Appellate Procedure ("RAP") 17.

penalty as a potential sentencing option for Appellees Joshua Morsch and Kathy Stewart. We find error in the trial court's pretrial ruling excluding the death penalty, and error in the trial court's actions while the Commonwealth's interlocutory appeal was pending. Accordingly, we vacate the trial court's orders excluding the death penalty in Appellees' cases and vacate the final judgment on Morsch's plea of guilty that was entered while the Commonwealth's interlocutory appeal was pending. On remand, these cases shall proceed to a jury trial with the death penalty as a possible sentencing option. Should either Appellee plead guilty on remand, sentencing by a jury is required if the Commonwealth requests it. Appellees' victims shall be given notice of any plea or sentencing proceeding, as required under Marsy's Law.

## I. Facts and Procedural Background

This case has lingered in Kentucky courts for more than a decade. In 2012, Morsch gave a recorded statement to law enforcement admitting that he had murdered Earl Woods during a planned robbery. Morsch stated that on the day in question, Woods had answered his door in a wheelchair; Morsch beat Woods in the head several times with a hammer before ransacking his house looking for items (prescription pills) to steal; and before leaving, Morsch slit Woods's throat and wrist, causing him to bleed out and die. A grand jury indicted Morsch for murder, first-degree robbery, theft by unlawful taking, and being a second-degree persistent felony offender ("PFO-2"). The Clay County

2

Commonwealth's Attorney, under KRS[2] 532.025, filed a notice of intent to seek the death penalty as a possible sentence, identifying murder committed in the course of first-degree robbery as the statutory aggravator.

Stewart is alleged to have participated in the planning of the robbery and by distracting Woods's roommate during the commission of the offense, thereby preventing that person from observing or stopping the crime.[3] Following Morsch's confession, a grand jury indicted Stewart for complicity to murder, first-degree robbery, theft by unlawful taking, being a PFO-2, and a felon in possession of a firearm. The Clay County Commonwealth's Attorney also filed a notice of intent to seek the death penalty as a possible sentence for Stewart, identifying robbery in the first degree as the statutory aggravator. The trial court later severed Stewart's case from Morsch's, and the Commonwealth chose to try Morsch first.

Morsch's trial was delayed for over a decade, due to Morsch's numerous motions to continue and various scheduling conflicts. At no time did the Commonwealth present Morsch with a plea offer. Additionally, Morsch did not assert his right to a speedy trial until 2022. Morsch's counsel filed multiple pretrial motions to preclude the Commonwealth from seeking the death penalty as a possible punishment option or declare it unconstitutional. The trial court

---

[2] Kentucky Revised Statutes.

[3] Morsch's account of Stewart's participation in the crime, as articulated by his attorney at Morsch's sentencing, was that Morsch was at Woods's house to steal pills on Stewart's behalf, that Stewart planned the robbery, forced a hammer into Morsch's hands, and told him to steal prescription pills from Woods if Morsch did not want Stewart to end their relationship.

denied all motions until January 18, 2022, when it changed course and entered an order excluding the death penalty as a sentencing option finding it disproportionate to other death penalty cases from a pretrial review of the evidence.

The Commonwealth filed an interlocutory appeal from that order pursuant to RCr[4] 12.04 and KRS 22A.020(4), objecting to the trial court's removal of the death penalty as a possible sentence. Mere hours after the Commonwealth filed its interlocutory appeal, Morsch filed a motion for a speedy trial by jury and noticed the motion for the following morning. However, rather than arguing the speedy-trial motion at the hearing, Morsch instead moved to enter an open guilty plea to all counts. The Commonwealth objected, noting its pending interlocutory appeal, the resolution of which may result in the death penalty being a possible sentencing option in this case. In response, defense counsel argued that the interlocutory appeal did not divest the trial court of jurisdiction to continue with the proceedings. The trial court agreed to entertain Morsch's guilty plea, stating that if this Court renders an opinion reinstating the death penalty, it will "cross that bridge when it comes to it." Morsch's counsel made clear that his plea was predicated on the death penalty being excluded as a sentencing option.

During the plea colloquy, the issue of sentencing arose. The court stated that the jury would set the penalty, but Morsch's counsel asked that the court

---

[4] Kentucky Rules of Criminal Procedure.

4

set Morsch's sentence that day. To allow for this expedited sentencing, Morsch's counsel proffered a prewritten motion to waive the customary presentence investigation. The court hesitated, stating it "did not anticipate that." The Commonwealth objected to sentencing Morsch that day, noting that Morsch's victims have a constitutional right to be notified of plea and sentencing proceedings. In response, defense counsel stated that this case predates Marsy's Law so those rights do not attach and further, that the Commonwealth had never invoked Marsy's Law before this point.

The trial court proceeded with sentencing, and allowed defense counsel to describe its unsworn theory of the evidence, and to argue for mitigation in sentencing. No witnesses were called. Defense counsel painted a picture of Morsch's troubled childhood, in which he allegedly suffered physical abuse, bouts of hunger and homelessness, and the loss of his sister. Turning to the crime at hand, defense counsel alleged that Woods was a drug dealer and that Morsch had been high on methamphetamine and driven to commit the crime by Stewart, who wanted Morsch to steal prescription pills for her.

The Commonwealth reiterated its objection, emphasizing that it had waited for years to ensure this case was heard by a jury with all sentencing options available. Nevertheless, the trial court sentenced Morsch to life without parole for 25 years for the murder conviction and to terms-of-years sentences for the remaining convictions and entered a final judgment accordingly. The entire hearing, from the contested open guilty plea to the pronouncement of sentence, took less than 30 minutes.

5

The Commonwealth appealed Morsch's final judgment and sentence, which as a matter of right[5] proceeded directly to this Court. This Court accepted transfer of Morsch's interlocutory appeal pursuant to CR 74.02, as the issue raised is of great and immediate public importance and arose in capital litigation, an area exclusively within the appellate jurisdiction of the Kentucky Supreme Court. *Skaggs v. Commonwealth*, 803 S.W.2d 573, 577 (Ky. 1990). The interlocutory appeal has been consolidated with Morsch's matter of right appeal.

On March 7, 2022, the trial court granted Stewart's request to exclude the death penalty and adopted and incorporated the Morsch order in full. Stewart's motion to exclude the death penalty was based on the trial court's exclusion of the death penalty for Morsch (the more culpable of the defendants) and her argument that death was prohibited under the holding of *Enmund v. Florida*, 458 U.S. 782 (1982) because her acts do not exhibit the requisite *mens rea* for death. The Commonwealth filed an interlocutory appeal from that order, which has likewise been transferred to this Court. On appeal, Stewart opposed joint briefing with Morsch, which we indulged, but after review of Appellees' individually-filed briefs, we elect to address their appeals in a single decision.

---

[5] KY. CONST. § 110(2)(b).

## II. Analysis

By excluding the death penalty in Appellees' cases and by entering final judgment in Morsch's case, the trial court appeared to make a conscious effort to bring resolution to these decade-old cases. However, despite its good intentions, the trial court committed numerous reversible errors. The first set of errors concerns the trial court's entry of pretrial orders removing the death penalty as a sentencing option. The second set of errors involves actions the trial court took in Morsch's case while divested of jurisdiction by the Commonwealth's interlocutory appeal. The third set of errors relates to the trial court's handling of Morsch's sentencing. Each will be addressed in turn.

### A. *Excluding the Death Penalty as a Sentencing Option.*

Under Kentucky law, a person convicted of a capital offense may be sentenced to death pursuant to KRS 532.030. The Commonwealth's Attorney, by statute, has discretion to determine whether to seek the death penalty in all cases that statutorily qualify. For sentencing purposes, to be death-penalty eligible, a jury must find the evidence has proven the existence of at least one aggravating circumstance, as set forth in KRS 532.025(2). Aside from the death penalty, the sentencing options for an offender convicted of a capital offense are numerous: term of imprisonment for life without the benefit of probation or parole, a term of life imprisonment without the benefit of probation or parole until the offender has served a minimum of twenty-five (25) years, a sentence of life, or to a term of note less than twenty (2) years no more than fifty (50) years. KRS 532.030(1). Thus, for a capital offense, the

7

sentencing range extends from twenty (20) years to death. The sentencing phase of trial provides a defendant with the opportunity to present mitigating evidence to a jury in a plea for leniency. *Id.*

Imposition of the death penalty is subject to the Eighth Amendment to the United States Constitution, which, as applicable to the states via the Fourteenth Amendment, prohibits states from imposing cruel or unusual punishments. *Roper v. Simmons*, 543 U.S. 551, 560 (2005). To avoid being cruel or unusual, a death sentence must be proportionate to the crime committed. The United States Supreme Court has adopted "evolving standards of decency that mark the progress of a maturing society" as a measure to ensure that punishments are not disproportionately cruel or unusual. *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958). As recently noted by this Court in *White v. Commonwealth*, "[t]he United States Supreme Court in *Hall v. Florida*[, 572 U.S. 701 (2014),] held that some punishments are prohibited by the Eighth Amendment 'as a categorical matter.'" 600 S.W.3d 176, 179–80 (Ky. 2020). Those categorical bars include: "1) the denaturalization of a natural-born citizen; 2) sentencing a juvenile to death; and 3) sentencing persons with [an] intellectual disability to death." *Id.* at 180 (internal quotations omitted).

Appellees do not allege that they fall into any of these recognized categorial bars, nor does the trial court's orders excluding the death penalty make such findings. The trial court ultimately found that the death penalty was constitutionally disproportionate and comparatively disproportionate, based on its understanding of the evidence pretrial. The trial court found that

a death sentence in capital cases involving the trafficking of narcotics has never been recommended by a jury and that the Commonwealth's pursuit of the imposition of the death penalty in these types of cases unnecessarily consumes time and resources. As part of its rationale for excluding the death penalty, the trial court considered other cases over which it had presided and other factually similar capital cases, state-wide.

On *de novo* review of the purely legal issue presented, *Osborne v. Commonwealth*, 185 S.W.3d 645, 648 (Ky. 2006), we conclude that decision was not for the trial court to make. The General Assembly has specifically authorized capital punishment for murder committed in conjunction with first-degree robbery and the Commonwealth properly exercised its discretion to seek the death penalty in these cases. The trial court had no authority, prior to hearing the evidence presented in the guilt phase of trial, to exclude capital punishment as a sentencing option. *Commonwealth v. Guernsey*, 501 S.W.3d 884, 888 (Ky. 2016).

Rather, only after the Commonwealth has had the opportunity to present its evidence at trial, and thereby subject that evidence to the adversarial process in the guilt phase, does the trial court gain authority to determine whether a death sentence would be inherently disproportionate. *See id.* at 892 ("summary judgment is unavailable in the criminal context in Kentucky[]"). The rationale for this process is as follows:

> Our adversary system of criminal justice assigns the roles of the participants. It is the duty of the prosecuting authority and defense counsel to intimately know the case prior to trial, and ordinarily

9

the trial judge does not gain such insight until all the evidence has been heard. Even then, in most cases, the court is not legally competent to make a final sentencing determination until a presentence investigation has occurred. For the trial court to determine the maximum sentence which may be imposed without a right of plea withdrawal, absent the concurrence of the Commonwealth, prior to trial, and without benefit of a presentence investigation, radically alters the substance of the process.

*Id.* (quoting *Commonwealth v. Corey*, 826 S.W.2d 319, 322 (Ky. 1992)).

Moreover, the trial court lacks authority at any point to conduct a comparative proportionality review, as that function is reserved solely to this Court as a matter of law, and only after the facts have been presented at trial and a death sentence has been imposed. *See* KRS 532.075(3)(c) (mandating that this Court engage in a proportionality review to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant[]"); *Guernsey*, 501 S.W.3d at 888 (the purpose of this review is "to ensure that a death sentence is not disproportionate relative to other sentences imposed for similar crimes" on all relevant cases statewide).

Accordingly, we vacate the trial court's orders excluding the death penalty, but in doing so feel compelled to expressly reaffirm our recent unanimous opinion in *Commonwealth v. Bredhold*, 599 S.W.3d 409 (Ky. 2020), given the insistence of Appellees' counsel that our ruling was erroneous and should be overruled. In *Bredhold*, a case in which no recognized Eighth Amendment categorial bar applied to the defendants, the defendants had yet to be adjudicated guilty and the Commonwealth's power to punish had yet to be

10

invoked, yet the Fayette Circuit Court nonetheless determined pretrial that Kentucky's death penalty was unconstitutional as to the age-based group identified by the defendants (between the ages of eighteen (18) and twenty-one (21) at the time of their offense). On review, we held that at this stage of the criminal proceedings, the case was not justiciable, as the defendants did not have actual or imminent injury that could support standing to raise a constitutional challenge to the death penalty statute since they had yet to be convicted, much less sentenced. *Id.* at 412-14. Accordingly, we vacated the interlocutory orders and remanded the case for further proceedings. *Id.*

Here, neither Appellee has been convicted or sentenced. Under our holding in *Bredhold*, they lack standing at this juncture to challenge the imposition, or constitutionality, of the death penalty as a possible punishment. We decline Appellees' invitation to reverse course on our ruling in *Bredhold*.

### B. Trial Court Proceedings While the Commonwealth's Interlocutory Appeal Was Pending.

Mere hours after the Commonwealth filed its interlocutory appeal from the trial court's order excluding the death penalty as a sentencing option in Morsch's case, Morsch filed a motion for a speedy trial and noticed the motion for the next morning. Instead of discussing that motion in court, Morsch sought to enter a surprise guilty plea and requested immediate sentencing. The Commonwealth objected, noting its ongoing interlocutory appeal. Morsch's counsel argued that the proceedings need not be delayed despite the appeal.

KRS 22A.020(4) allows the Commonwealth to secure appellate review of interlocutory orders in criminal cases before jeopardy attaches. This statutory

11

provision "furthers the Commonwealth's legitimate interest in the orderly administration of justice." *Ballard v. Commonwealth*, 320 S.W.3d 69, 72 (Ky. 2010). KRS 22A.020(4) specifies that an interlocutory appeal "shall not suspend the proceedings in the case." Notably, this Court "for over forty years has interpreted the term 'proceedings' in KRS 22A.020(4)(a) to refer only to proceedings after the attachment of jeopardy." *Smith v. Commonwealth*, 636 S.W.3d 421, 442 (Ky. 2021). Jeopardy attaches once a jury is empaneled and sworn. *Maupin v. Commonwealth*, 542 S.W.3d 926, 929 n.11 (Ky. 2018). Thus, under KRS 22A.020(4), "once the proceedings commence and jeopardy attaches, the proceedings will not be suspended while the Commonwealth seeks review of rulings made during the course of the trial." *Commonwealth v. Bailey*, 71 S.W.3d 73, 84–85 (Ky. 2002).

Here, since a jury had yet to be empaneled and jeopardy had not yet attached, the trial court should have stayed proceedings pending resolution of the Commonwealth's interlocutory appeal. Morsch argues that staying his case impeded his right to a speedy trial. However, the record reflects Morsch has slow-walked the Commonwealth's case for nearly a decade and is largely responsible for all the delays in this case. Even the trial court chastised Morsch's counsel at a January 6, 2022, hearing: "Don't argue with me about delay. All the delay that I've seen these nine years has been from your desk." At that same hearing, the trial court observed that the Commonwealth has been ready to try this case since the year after Morsch was indicted.

12

Morsch's self-induced delays defeat his claim that staying his case for purposes of addressing the Commonwealth's interlocutory appeal impedes his right to a speedy trial, when he waited almost ten years before asserting that right for the first time. *See, e.g., Stacy v. Commonwealth*, 396 S.W.3d 787, 798 (Ky. 2013) (defendants must "vigorously" pursue their speedy-trial rights); *Dunaway v. Commonwealth*, 60 S.W.3d 563, 571 (Ky. 2001) (defendants who request continuances "toll the running of the constitutional speedy trial clock[]"). For these reasons, the trial court should have stayed any further proceedings pending appellate review of the Commonwealth's interlocutory appeal. Accordingly, we vacate Morsch's guilty plea and sentence.

### C. *The Sentencing Procedure.*

The trial court compounded its errors by sentencing Morsch without timely notice to the Commonwealth and by dismissing the Commonwealth's request for sentencing by a jury. In *Commonwealth v. Johnson*, this Court squarely addressed the issue of "whether, upon an unconditional guilty plea, the Commonwealth is entitled to present its case for punishment to a jury for its verdict prior to imposition of final judgment." 910 S.W.2d 229, 229 (Ky. 1995). In that case, the Commonwealth sought the death penalty and requested that the trial court empanel a jury for the purpose of recommending punishment. The trial court declined to do so and it alone fixed the punishment. On appeal, this Court reversed, holding that "[b]y its plain language, RCr 9.26(1) requires the consent of the Commonwealth as well as approval of the court for a defendant's waiver of a jury trial to be effective." *Id.*

13

Further, in cases permitting the death penalty, "jury sentencing is deeply ingrained in Kentucky law." *Id.* at 231. As such, jury participation in sentencing "has been regarded as indispensable except upon concurrence of all involved." *Id.* The *Johnson* court expressly declined to construe RCr 9.84(2) "so as to eliminate the Commonwealth's right to demand a jury when the defendant pleads guilty." *Id.*

Indeed, even when a defendant pleads guilty, jury participation is important for "the Commonwealth may introduce evidence to increase the punishment to be inflicted, and the defendant may produce evidence in an effort to mitigate the punishment." *Id.* The "public's right of participation" in the sentencing process should thus "not be taken lightly." *Id.* In the case at bar, the trial court committed error by accepting a plea of guilty from Morsch and by sentencing him without empaneling a jury to recommend a punishment, as requested by the Commonwealth.

Moreover, because of Morsch's "bait-and-switch" tactic of noticing a motion for speedy trial but instead seeking to enter a surprise guilty plea, the Commonwealth was deprived of the opportunity to prepare for sentencing and Morsch's victims were deprived of their constitutional right to be present for the plea and sentencing proceedings. In 2020, Kentucky voters ratified a proposed amendment to Kentucky's Constitution known as Marsy's Law (codified at Ky. Const. § 26A) which gives victims "justice and due process" by providing them a "meaningful role" in the "criminal and juvenile justice system." Ky. Const. § 26A.

14

> Section 26A gives victims of crime procedural protections throughout the criminal justice process.  Among other things, the law gives crime victims the right to be notified of court proceedings, the right to speak at proceedings where a plea or sentencing may occur, and the right to have their safety considered when rulings are made.

*Gordon v. Jud. Conduct Comm'n*, 655 S.W.3d 167, 180 (Ky. 2022).  "The victim, the victim's attorney or other lawful representative, or the attorney for the Commonwealth upon request of the victim may seek enforcement of the[se] rights[.]"  Ky. Const. § 26A.  If the victim is deceased, as is the case here, KRS 421.500(1) defines "victim" to include the spouse of the deceased and his or her children, among others.

Under the express language of Section 26A, the Commonwealth had authority to seek enforcement of the victims' rights on their behalf.  Marsy's Law was in effect at the time the Commonwealth invoked the victims' rights.  The trial court committed reversible error by refusing to afford Morsch's victims the constitutional right afforded to them by Section 26A.  Even outside the requirements of Marsy's Law, it would be poor practice for a trial court to move forward with final resolution of a murder case without the individuals most impacted by the offense having any notice of the proceedings.  On remand, Morsch's victims shall be given ample notice of any proceeding involving a release, plea or sentencing and given the right to be present, and heard, if applicable.  Notice to the Commonwealth is sufficient for purposes of notifying the victims of their rights under Marsy's Law.

15

### III.    Conclusion

For the foregoing reasons, we vacate the Clay Circuit Court's orders excluding the death penalty as a sentencing option in Appellees' cases and vacate Morsch's final judgment and sentence.  This case is remanded to the trial court with instructions to proceed to a jury trial in which the death penalty is included as a sentencing option.  Should either Appellee plead guilty to the charges contained in the indictment, sentencing by a jury is required if the Commonwealth requests it.  Lastly, no plea or sentencing proceeding shall take place without ample notice to the Commonwealth, and to that effect, Morsch's victims.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Daniel J. Cameron
Attorney General of Kentucky

Matthew Franklin Kuhn
Michael Robert Wajda
Jeffrey Allan Cross
Assistant Attorney General

Harold Douglas Rader
Assistant Commonwealth's Attorney


COUNSEL FOR APPELLEE,
JOSHUA MORSCH:

Kayla Danielle Deatherage
Shannon Renee Dupree
Bonnie Katherine Potter
Kathleen Kallaher Schmidt
Department of Public Advocacy


COUNSEL FOR APPELLEE,
KATHY STEWART:

Kathleen Kallaher Schmidt
Department of Public Advocacy